## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | | |
|---|---|---|
| DAMON LAMAR CAMPBELL, | ) | |
| | ) | |
| | ) | 3:11-cv-00532-RCJ-VPC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF U.S. MAGISTRATE JUDGE** |
| MANUEL PORTILLO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | October 15, 2012 |
| _____ | ) | |

This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary judgment (#25) and plaintiff's cross-motion for summary judgment (#29).[1]  Plaintiff opposed defendants' motion for summary judgment (#34) and defendants replied (#36). Defendants opposed plaintiff's cross-motion for summary judgment (#31) and plaintiff replied (#33).  The court has thoroughly reviewed the record, and recommends that defendants' motion for summary judgment be granted and plaintiff's cross-motion for summary judgment be denied.

## I.  HISTORY & PROCEDURAL BACKGROUND

Plaintiff Damon Lamar Campbell ("plaintiff"), a *pro se* inmate, is currently incarcerated at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#3).  However, the allegations set forth in plaintiff's complaint pertain to events which occurred while plaintiff was an inmate at High Desert State Prison- Indian Springs ("HDSP") (#9). Plaintiff brings his civil rights complaint pursuant to 42 U.S.C. § 1983, alleging prison officials:

---

[1] Refers to the Court's docket number.  Defendants also filed three exhibits under seal (#26, Ex. H, Ex. I, Ex. J (sealed)).

used excessive force against him, in violation of the Eighth Amendment; were deliberately indifferent to plaintiff's serious medical needs, in violation of the Eighth Amendment; and restricted plaintiff's speech, in violation of the First Amendment. *Id.* The Court screened the complaint pursuant to 28 U.S.C. § 1915A, and allowed the following claims to proceed: (1) Eighth Amendment excessive force claim against defendants Manuel Portillo, Colin Brown, Rick Giancola, Jessica Sellers, and Michael Naylor; (2) Eighth Amendment deliberate indifference to medical needs claim against defendants Beebe Clark and Arturo Buen; and (3) supervisory liability claim against defendants Isidro Baca and Arthur Lindsay (#4, p. 6).

The court relates the pertinent facts contained in plaintiff's complaint (#9) and defendants' motion for summary judgment (#25). Plaintiff alleges that he was in the visiting area at HDSP when Senior Correctional Officer Portillo entered the room and ordered all inmates to sit down on the bench and face the wall (#9, p. 6). Plaintiff complied. *Id.* However, the inmate sitting beside plaintiff, Deshawn Crawford, refused to sit facing the wall. *Id.* Portillo ordered Crawford to face the wall, but Crawford continued to refuse Portillo's demand. *Id.* Plaintiff advised Crawford to "[j]ust chill and face the wall because it wasn't worth the headache." *Id.* Crawford turned and faced the wall. *Id.* A few seconds later, plaintiff heard Portillo say, "Hey Hey." *Id.* Crawford informed plaintiff that Portillo was trying to get his attention. *Id.* at 7. Plaintiff turned around and Portillo ordered plaintiff to move down the bench to make space for another inmate to sit down. *Id.* Plaintiff complied and apologized to the other inmate, explaining he had not realized the other inmate was standing behind him. *Id.*

Portillo then asked plaintiff for his identification card. Plaintiff handed over the card, and Portillo walked outside. *Id.* at 7. Crawford asked plaintiff if he knew why Portillo was "tripping." *Id.* Plaintiff stated he did not know, and complained that he was just trying to get

back to his unit.  *Id.*  Standing in the doorway, Portillo told plaintiff to "shut the fuck up motherfucker."  *Id.*  Plaintiff retorted that Portillo did not have to speak to him in that manner. *Id.*  Portillo replied, "I'll do what the fuck I want."  *Id.*  Then, Portillo walked over to plaintiff, grabbed his jumpsuit, and pulled plaintiff to his feet.  *Id.*  Plaintiff protested, "You don't have to do that, I haven't done anything."  *Id.*  Portillo grabbed plaintiff's right wrist and Senior Correctional Officer Brown grabbed plaintiff's left wrist.  *Id.*  Portillo yanked plaintiff's wrist and Brown placed plaintiff in a chokehold, throwing plaintiff to the ground.  *Id.*  Plaintiff's arms were pinned underneath him while Brown "continued to ratchet his chokehold tighter and tighter until plaintiff lost consciousness, causing plaintiff to convulse, [and vomit] blood, food particles, and stomach acids through plaintiff's nose and mouth."  *Id.* at 7-8.

After plaintiff regained consciousness, he attempted to talk to medical staff, but Correctional Officer Naylor told him to "shut the fuck up."  Naylor also continued to bend plaintiff's left wrist.  *Id.* at 8.  The nurses wiped the blood and vomit from plaintiff's face and asked the officers to loosen plaintiff's left wrist restraint.  *Id.* at 11.  Then the nurses released plaintiff to be escorted back to his cell.  *Id.*  As a result of defendants' actions, plaintiff alleges he suffered migraine headaches, permanent hearing loss, dizziness, a severely swollen tongue, a bruised bicep, a sore shoulder, a sore neck, a worsening of his pre-existing throat condition, psychological trauma and mental anguish.  *Id.* at 8.

Defendants submitted an investigation detail report and eight affidavits, and allege that on August 17, 2010, plaintiff was involved in a physical altercation with multiple correctional officers at HDSP (#26, Ex. I (sealed)).  The altercation occurred in the visiting area where numerous inmates, including plaintiff, were gathered to await return to their housing units (#25, Ex. A, ¶ 6, Ex. B, ¶ 6; #26, Ex. I, p. 1 (sealed)).  Senior Correctional Officer Portillo asked

plaintiff to make room on a bench so that other inmates could sit down (#25, Ex. A, ¶¶ 6-7, Ex. B, ¶ 7, Ex. C, ¶ 7; #26, Ex. I, pp. 1-2 (sealed)).  Plaintiff refused, telling Portillo that he could not tell plaintiff what to do (#25, Ex. A, ¶ 10, Ex. B, ¶ 8, Ex. C, ¶ 8; #26, Ex. I, pp. 1-3 (sealed)).  Portillo asked plaintiff for his identification card and plaintiff handed over the card.  However, plaintiff continued to make statements to the effect that Portillo could not tell plaintiff what to do (#25, Ex. A, ¶ 11, Ex. B, ¶ 8).  Correctional Officer Giancola advised plaintiff to calm down.  Instead, plaintiff became visibly agitated (#25, Ex. E, ¶ 9).

Portillo ordered plaintiff to face the wall, but plaintiff refused (#25, Ex. A, ¶ 12, Ex. C, ¶ 8).  Instead, plaintiff stood up abruptly and aggressively faced Portillo with his fists clenched (#25, Ex. A, ¶ 12, Ex. B, ¶ 10, Ex. C, ¶ 9; #26, Ex. I, pp. 1-3, 6 (sealed)).  Giancola and Senior Correctional Officer Brown perceived plaintiff's actions to be a threat to their safety, Portillo's safety, and the safety of others in the visiting area (#25, Ex. B, ¶ 11, Ex. E, ¶ 10).  Brown was also concerned by plaintiff's actions because there were multiple segregation inmates in the visiting area, and he believed a serious disturbance could result if he allowed plaintiff to act in a threatening manner (#25, Ex. B, ¶ 12).

Portillo and Brown approached plaintiff and secured his hands (#25, Ex. A, ¶ 13, Ex. B, ¶ 11).  Brown repeatedly ordered plaintiff to sit down on the bench and face the wall, but plaintiff did not comply (#25, Ex. A, ¶ 13, Ex. B, ¶ 13).  Portillo reached down to secure plaintiff's leg for a take-down; however, plaintiff pushed off the wall and fell on top of Portillo (#25, Ex. A, ¶ 14, Ex. B, ¶ 14, Ex. C, ¶ 12; #26, Ex. I, pp. 1-2, 6 (sealed)).  Brown pushed plaintiff off of Portillo, and Officers Sellers, Giancola, Naylor, and Portillo attempted to secure plaintiff in restraints (#25, Ex. A, ¶ 15, Ex. B, ¶¶ 15-16, Ex. D, ¶¶ 8-10; #26, Ex. I, pp. 1-3, 6 (sealed)).  However, plaintiff lay on his stomach with his arms tucked under his body, and refused to bring his hands

4

towards his back (#25, Ex. A, ¶¶ 15-17, Ex. C, ¶¶ 13-16, Ex. E, ¶ 12).  The officers struggled

with plaintiff before securing his hands and feet.  *Id.*  As a result of the incident, Portillo

sustained bruises and scrapes on his forearms and left thigh (#25, Ex. A, ¶ 18; #26, Ex. I, p. 1

(sealed)).

      Once plaintiff was restrained and the incident had concluded, Associate Warden Baca

and Correctional Sergeant Lindsay arrived in the visiting area (#25, Ex. K, ¶ 5; #26, Ex. I, pp. 1-

2 (sealed)).  Nurse Clark and Nurse Buen also arrived and provided medical treatment to plaintiff

(#25, Ex. F, ¶¶ 5-6, Ex. G, ¶ 5).  Plaintiff had vomited, and had a bloody nose and a red mark on

his right clavicle (#25, Ex. F, ¶¶ 8-10, Ex. G, ¶¶ 8-10; #26, Ex. H (sealed)).  Plaintiff told Clark

and Buen that the officers had knocked him out, but also denied losing consciousness (#25, Ex.

F, ¶ 7, Ex. G, ¶ 7; #26, Ex. H (sealed)).  Clark examined plaintiff's head, but did not observe any

injuries (#25, Ex. F, ¶ 8, Ex. G, ¶ 8; #26, Ex. H (sealed)).  Clark told plaintiff to inform staff if he

developed a severe headache, felt nauseous or vomited (#25, Ex. F, ¶ 10, Ex. G, ¶ 10; #26, Ex. H

(sealed)).  Clark concluded that plaintiff could return to his cell and did not have go to the

infirmary (#25, Ex. F, ¶ 11).  The next day, Dr. Saavedra examined plaintiff and determined that

plaintiff had no serious injuries (#26, Ex. J, p. 3 (sealed)).

      Defendants now move for summary judgment on the grounds that: (1) defendants did not

subject plaintiff to excessive force; (2) defendants Clark and Buen were not deliberately

indifferent to plaintiff's serious medical needs; (3) defendants Baca and Lindsay are not liable in

their supervisory capacities; (4) defendants are entitled to qualified immunity; and (5) defendants

cannot be sued in their official capacity (#25, p. 2).[2]  Defendants attach several documents to

support their motion for summary judgment, including: an investigation detail report (#26, Ex. I

---

[2] Plaintiff concedes that defendants cannot be sued in their official capacity (#34, p. 13).

(sealed));[3] plaintiff's progress notes, medical kites, medical records, and unusual occurrence reports (#26, Ex. J (sealed));[4] declarations from defendants Portillo (#25, Ex. A), Brown (#25, Ex. B), Sellers (#25, Ex. C), Naylor (#25, Ex. D), Giancola (#25, Ex. E), Clark (#25, Ex. F), Buen (#25, Ex. G), and Baca (#25, Ex. K); a compact disc containing audio from plaintiff's disciplinary hearing (#25, Ex. L);[5] and a transcript of plaintiff's disciplinary hearing (#25, Ex. M).[6]

Plaintiff opposes defendants' motion and moves for summary judgment on the grounds that: (1) defendants subjected plaintiff to excessive force, in violation of the cruel and unusual punishment principles forbidden by the Eighth Amendment; (2) defendants Clark and Buen were deliberately indifferent to plaintiff's serious medical needs because they failed to properly assess plaintiff's injuries; (3) defendants Baca and Lindsay were present while their subordinates subjected plaintiff to excessive force, but did nothing to protect plaintiff from the physical abuse inflicted by the correctional officers and did nothing to ensure plaintiff received proper medical care; and (4) defendants are not entitled to qualified immunity (#29).

## II.  LAW & ANALYSIS

### A.  RELEVANT LAW

#### 1.  42 U.S.C. § 1983

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert,* 526 U.S. 286, 290 (1999).  Section 1983 does not offer any substantive rights, but provides procedural protections for federal rights granted elsewhere.  *Albright v. Oliver,* 510 U.S. 266, 271 (1994).

---

[3] Authenticated by the Declaration of Perla Hernandez (#25).
[4] Authenticated by the Declaration of Karen L. Lowery (#25).
[5] Authenticated by the Declaration of Isidro Baca (#25, Ex. K).
[6] Transcribed by Shannon L. Taylor and authenticated by the Transcriber's Certificate (#25, Ex. M, p. 20).

To prove liability under § 1983, a plaintiff must: (1) show that a person acting under color of state law engaged in some type of conduct, which (2) deprived the plaintiff of some right, privilege or immunity secured by the Constitution or federal statutory law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (overturned on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986)).

### 2.   Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where there are no factual disputes. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court will grant summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citations omitted). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting authenticated evidence to demonstrate the absence of any genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Orr v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002). Once the moving party has met its burden, the party

opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

On summary judgment the court is not to weigh the evidence or determine the truth of the matters asserted, but must only determine whether there is a genuine issue of material fact that must be resolved by trial. *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997). Nonetheless, in order for any factual dispute to be genuine, there must be enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's summary judgment motion. *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## B.  ANALYSIS

Defendants contend that they did not subject plaintiff to excessive force, nor did defendants Clark and Buen exhibit deliberate indifference to plaintiff's serious medical needs (#25, p. 2). Defendants also contend that defendants Baca and Lindsay cannot be liable in their supervisory capacities. *Id.* Finally, defendants aver that even if this Court concludes there are genuine issues of material fact as to plaintiff's excessive force claim, defendants are nonetheless entitled to qualified immunity because a reasonable correctional officer would not conclude that defendants' actions were illegal under the circumstances. *Id.* at 15.

Plaintiff asserts that defendants used unjustified and excessive force to restrain him and that defendants Clark and Buen showed deliberate indifference to plaintiff's medical needs (# 34, p. 4-11). Plaintiff also asserts that defendants Baca and Lindsay were present during the use of

force incident, but did nothing to stop their subordinates from abusing plaintiff and did nothing to ensure that plaintiff received proper medical care afterwards. *Id.* at 11-12. Finally, plaintiff contends that defendants are not entitled to qualified immunity, as the evidence shows defendants "'had a conscious commitment' to a common scheme designed to achieve an unlawful objective." *Id.* at 13.

### 1. Excessive Force

When an inmate claims that his Eighth Amendment right to be free from cruel and unusual punishment has been violated based on a prison official's use of excessive force, the proper inquiry is whether the force resulted in the unnecessary and wanton infliction of pain or suffering. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To determine whether the force used was wanton and unnecessary, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. In making this determination, the court considers the following factors: (1) the extent of the injury suffered by the inmate, (2) the need for application of force, (3) the relationship between that need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). There is no need to show the inmate suffered a serious injury as a result of the force, but the lack of such an injury is relevant to the inquiry. *Id.* at 7-9; *see also Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). The court must give deference to prison officials when reviewing the use of force and cannot substitute its own judgment for the judgment of prison officials. *Whitley*, 475 U.S. at 322. Unless the evidence supports a reliable inference of wantonness, the case should not go to the jury. *Id.*

Defendants argue that the evidence, when viewed in light of the *Hudson* factors,

demonstrates that defendants did not use excessive force while restraining plaintiff (#25, p. 7).

Plaintiff argues that defendant Portillo sought out a verbal altercation with plaintiff because

Portillo was angry that inmate Crawford listened to plaintiff's request to sit down and face the

wall instead of Portillo's orders to do so (#25, Ex. M, pp. 8-10; #34, pp. 6, 8).   Plaintiff also

contends: (1) he suffered serious injury (#34, p. 5); (2) he was fully compliant with all of the

correctional officers' orders and did not attack defendant Portillo (#34, p. 6); (3) the correctional

officers used excessive force to restrain him (#34, p. 7); (4) the correctional officers' affidavits

contain multiple factual inconsistencies which infer that the officers intended to inflict malicious

force upon plaintiff (#34, pp. 7-8); (5) plaintiff did not struggle with the officers to be defiant,

but because he was being choked to death (#34, p. 8); and (6) even if defendants' initial use of

force was in good faith, once plaintiff was rendered unconscious, defendant Brown's continued

use of the chokehold constituted excessive force (#29, p. 5).

First, regarding the *Hudson* factors, the record does not establish that plaintiff suffered a

serious injury as a result of his altercation with correctional officers.   Plaintiff alleges he suffered

dizziness, migraine headaches, permanent hearing loss, a severely swollen tongue, a bruised

bicep, a sore shoulder, a sore neck, and a worsening of his pre-existing throat condition (#9, p.

8).   Plaintiff also alleges he suffered psychological trauma and mental anguish, such as

nightmares, depression and uneasiness.   *Id.*   However, the unusual occurrence report only shows

that plaintiff vomited, and sustained a bloody nose and a red mark on his clavicle as a result of

the August 17, 2010, incident (#26, Ex. H (sealed)).[7]   *See Villiarimo v. Aloha Island Air, Inc.*,

281 F.3d 1054, 1061 (9th Cir. 2002) ("[u]ncorroborated and self-serving testimony" without

more, will not create a genuine issue of material fact precluding summary judgment).   In

---

[7] The Court notes that plaintiff has submitted several medical kites complaining of ringing in his ears and a film on his tongue.   However, there is nothing in plaintiff's medical records to suggest that these alleged symptoms could occur as a result of a chokehold (*See* #26, Ex. J, p. 1 (sealed)).

addition, defendant Clark determined that plaintiff's injuries were so minor that he did not need to go to the infirmary, but could be returned to his cell (#25, Ex. F, ¶ 11).  Finally, Dr. Saavedra examined plaintiff the day after the incident and found no serious injuries (#26, Ex. J, p. 3 (sealed)).  Plaintiff has not provided the Court with sufficient evidence to demonstrate that he suffered a serious injury as a result of defendants' actions.  In light of the evidence presented to the court, plaintiff's injuries appear to be *de minimis*.

Second, defendants reasonably concluded that force was necessary under the circumstances.  Although plaintiff alleges that defendant Portillo initiated physical force by grabbing plaintiff's jumpsuit and pulling him to his feet (#9, p. 7), plaintiff fails to include any affidavits from alleged witnesses who could corroborate this version of events.  Plaintiff also contradicted his own rendition of the facts at his disciplinary hearing and in his cross-motion for summary judgment, in which plaintiff states he stood up and turned around to face Portillo (*See* #25, Ex. M, p. 10; #29, p. 14).  On the other hand, defendants have produced multiple affidavits which state that plaintiff repeatedly refused direct orders, acted aggressively towards correctional officers, and may have shoved defendant Portillo in the face or neck (#25, Ex. A, ¶¶ 10-14, Ex. B, ¶¶ 7-14, Ex. E, ¶ 11).  An aggressive inmate who seeks to fight with prison staff would necessitate the need for force.  In addition, the court notes that there were other inmates present in the visiting area.  Thus, plaintiff's aggressive actions could have created a disturbance, and presented a danger to the security of the institution and the safety of prison staff.  This circumstance renders the correctional officers' decision to restrain plaintiff reasonable to maintain order in the visiting area.  In light of *Whitley's* admonition that the court may not substitute its own judgment for that of prison officials, this court concludes there was a genuine need for force in this case.

Third, there is a reasonable relationship between the need for force and the amount of force used.  The evidence demonstrates that defendants Portillo and Brown initially attempted to gain plaintiff's compliance with verbal commands, and that defendant Giancola asked plaintiff to calm down when plaintiff became agitated (#25, Ex. E, ¶ 9).  After this approach failed, defendants Portillo and Brown attempted to secure plaintiff's hands (#25, Ex. A, ¶ 13, Ex. B, ¶ 11).  Only after plaintiff refused additional verbal commands to sit down on the bench and face the wall, defendant Portillo reached down to secure plaintiff's leg for a take-down to obtain compliance and eliminate further escalation of the situation (#25, Ex. A, ¶¶ 13-14).  Because plaintiff pushed off the wall and fell on top of defendant Portillo, force was necessary to restrain plaintiff; and force continued to be necessary once plaintiff struggled on the ground with correctional officers and laid on his arms to avoid wrist restraints (#25, Ex. A, ¶¶ 15-17, Ex. B, ¶¶ 15-17, Ex. C, ¶¶ 10-11, 13-16, Ex. D, ¶¶ 9-10, Ex. E, ¶ 12).[8]  In short, the record does not indicate that the amount of force used in this case was unnecessary or excessive.  Instead, the record reveals that defendants acted in good-faith and used the appropriate amount of force to subdue a verbally and physically aggressive inmate.

Fourth, defendants reasonably perceived plaintiff's actions to constitute a threat (#25, Ex. A, ¶¶ 10-14, Ex. B, ¶¶ 10-14, Ex. C, ¶¶ 8-9, 12).  Plaintiff disobeyed multiple direct orders; he argued with defendant Portillo; he abruptly rose from the bench and faced Portillo in an aggressive manner; and he pushed off the wall in an attempt to physically resist the correctional officers (#25, Ex. A, ¶¶ 10-14, 20, Ex. B, ¶¶ 10-14, Ex. C, ¶¶ 8-9, Ex. E., ¶¶ 9-10).  Defendant Brown stated that he was aware that plaintiff was assigned to the segregation unit, and that

_____

[8] As for plaintiff's contention that defendant Brown continued to choke him after the need for force concluded, plaintiff has submitted no evidence (other than his self-serving testimony) to support this contention.  *See Villiarimo*, 281 F.3d at 1061 ("[u]ncorroborated and self-serving testimony" without more, will not create a genuine issue of material fact precluding summary judgment).

plaintiff's actions constituted a threat towards defendant Portillo's safety and the safety of others (#25, Ex. B, ¶¶ 11-12).  Defendant Giancola stated that plaintiff was visibly agitated, refused to follow orders, and that he felt plaintiff was acting in a threatening manner (#25, Ex. E, ¶¶ 9-10).  Thus, the court finds there is sufficient evidence to show that defendants reasonably perceived plaintiff's actions to constitute a threat to institutional security and the safety of prison staff.

Fifth, defendants made several efforts to temper the severity of their response.  Defendants gave plaintiff multiple chances to comply with verbal orders before undertaking a physical response.  Defendant Giancola asked plaintiff to calm down, but plaintiff refused (#25, Ex. G, ¶ 9).  Defendants Portillo and Brown initially attempted to secure only plaintiff's hands (#25, Ex. A, ¶ 13, Ex. B, ¶ 11).  It was only after plaintiff refused additional verbal orders, did defendant Portillo reach down to secure plaintiff's leg for a take-down (#25, Ex. A, ¶¶ 13-14).  Accordingly, the court concludes that defendants made several attempts to temper the severity of their response.

Finally, the court underscores its obligation to give deference to prison officials when reviewing the use of force.  *Whitley*, 475 U.S. at 322; *see Beard v. Banks*, 548 U.S. 521, 530 (2006).  Here, there is nothing in the record to suggest that defendants acted maliciously or sadistically to harm plaintiff.  Instead, the evidence suggests that defendants applied force in a good-faith effort to maintain or restore discipline.[9]  As the Supreme Court has noted, the prisoner must point to sufficient evidence to demonstrate that he can prevail on the merits.  *Whitley*, 475 U.S. at 322.  Plaintiff has provided no evidence, by affidavit or otherwise, to contradict the

---

[9] Plaintiff's accusation that defendant Portillo assaulted him because Portillo was angry that inmate Crawford listened to plaintiff's request to sit down and face the wall instead of Portillo's orders to do so is unsupported by the record (#25, Ex. M, pp. 14-15).

account given in the investigation detail report and in defendants' affidavits.[10]  The court finds

no indication that defendants used excessive force to restrain plaintiff on August 17, 2010; or

that defendants' actions exhibited a reliable inference of wantonness.  *See id.*

Accordingly, the court recommends that defendants' motion for summary judgment be

granted and plaintiff's cross-motion for summary judgment be denied as to plaintiff's Eighth

Amendment claim for excessive force.

### 2.   Deliberate Indifference to Plaintiff's Serious Medical Needs

A prisoner's claim of inadequate medical care arises under the Eighth Amendment.  *See*

*Whitley v. Albers*, 475 U.S. 312, 319 (1986).  The Eighth Amendment prohibits the imposition of

cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized

standards, humanity, and decency."  *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  To prevail on

an action alleging cruel and unusual punishment, a plaintiff's case must satisfy an objective

standard—that the deprivation was serious enough to amount to cruel and unusual punishment;

and a subjective standard—deliberate indifference.  *Farmer v. Brennan*, 511 U.S. 825, 834

(1994); *see also Wilson v. Seiter*, 501 U.S. 294, 297-304 (1991).  A prison official violates the

Eighth Amendment when he acts with deliberate indifference to an inmate's serious medical

needs.  *Farmer*, 511 U.S. at 834.

The objective requirement of a "serious medical need" is met if the failure to treat a

prisoner's condition could result in further significant injury or the "unnecessary and wanton

infliction of pain."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle*, 429 U.S.

at 104).  In this circuit, examples of serious medical needs include "the existence of an injury

that a reasonable doctor or patient would find important and worthy of comment or treatment;

---

[10] Plaintiff's conclusory statements in his complaint, opposition, and cross-motion for summary judgment constitute "uncorroborated and self-serving testimony" that will not prevent a court from entering summary judgment once defendants have met their burden.  *See Villiarimo*, 281 F.3d at 1061.

the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citations omitted).

The subjective standard of deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835 (quoting *Whitley*, 475 U.S. at 319). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836. To prove deliberate indifference, a plaintiff must demonstrate that prison staff denied, delayed, or intentionally interfered with medical treatment; or that the way prison staff provided medical care indicated deliberate indifference, and that plaintiff sustained damages as a result of such conduct. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

Prison medical staff do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with the opinions of the inmate-patient. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). In addition, a difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to a serious medical need. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). However, a prisoner may establish that such a difference of opinion amounts to deliberate indifference where "the course of treatment the doctors chose was medically unacceptable under the circumstances," and such a course of treatment was chosen "in conscious disregard of an excessive risk to the prisoner's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff asserts that defendants Clark and Buen exhibited deliberate indifference to plaintiff's serious medical needs by failing to properly assess his injuries and provide treatment

15

following plaintiff's altercation with correctional officers (#34, p. 9).  Defendants move for summary judgment on the grounds that: (1) plaintiff cannot establish he had a serious medical need; and (2) the evidence shows that defendants did not disregard a serious risk to plaintiff's health (#25, p. 12).  Plaintiff moves for summary judgment on the grounds that: (1) plaintiff had a serious medical need when his "breathing was impaired and he became unconscious, vomiting blood through the mouth and nose" (#34, p. 9); and (2) defendant Clark and defendant Buen's examination was so flawed and perfunctory that it constituted deliberate indifference to plaintiff's medical needs (#34, p. 11; #29, p. 6).

Plaintiff's medical records reveal that immediately after plaintiff's altercation with correctional officers, defendant Clark examined plaintiff and defendant Buen wrote up the unusual occurrence report (#25, Ex. F, ¶¶ 5-6, Ex. G, ¶ 6).[11]  Defendant Clark found that plaintiff was awake, alert, and able to appropriately answer all questions, although he appeared to be agitated and hostile (#25, Ex. F, ¶ 8).  Defendant Clark examined plaintiff's head and observed no injuries.  *Id.*  She also examined plaintiff's nasal septum and found no signs of deviation.  *Id.*  Defendant Clark found that plaintiff had a bloody nose and a red mark on his clavicle as a result of the altercation with correctional officers (#25, Ex. F, ¶ 9; #26, Ex. H (sealed)).  She flushed plaintiff's nose with a saline solution, and instructed him to inform staff if he developed a severe headache, felt nauseous, or vomited (#25, Ex. F, ¶ 10; #26, Ex. H (sealed)).  Defendant Clark determined that plaintiff's injuries were so minor that he did not have to visit the infirmary; and instead, could be returned to his cell (#25, Ex. F, ¶ 11).  The next day, Dr. Saavedra examined plaintiff and found that plaintiff had no serious injuries (#26, Ex. J, p. 3 (sealed)).

First, the court finds that plaintiff's injuries do not establish a sufficiently serious medical need to satisfy the objective standard—that plaintiff's deprivation was serious enough to amount

---

[11] Defendant Clark was training defendant Buen on August 17, 2010 (#25, Ex. F, ¶ 4).

to cruel and unusual punishment.  Plaintiff alleges he suffered dizziness, migraine headaches, permanent hearing loss, a severely swollen tongue, a bruised bicep, a sore shoulder, a sore neck, a worsening of his pre-existing throat condition, psychological trauma and mental anguish (#9, p. 8).  However, the unusual occurrence report only indicates that plaintiff vomited, and sustained a bloody nose and a red mark on his clavicle as a result of the August 17, 2010, altercation with correctional officers (#26, Ex. H (sealed)).  *See Villiarimo*, 281 F.3d at 1061 ("[u]ncorroborated and self-serving testimony" without more, will not create a genuine issue of material fact precluding summary judgment).  In addition, defendant Clark determined that plaintiff's injuries were so innocuous that he did not need to go to the infirmary, and the next day Dr. Saavedra found that plaintiff had suffered no serious injuries (#25, Ex. F, ¶ 11; #26, Ex. J, p. 3 (sealed)).  Thus, the record before the court indicates that plaintiff sustained minor injuries in the August 17, 2010, incident with correctional officers.  Plaintiff has not established he had a sufficiently serious medical need that the deprivation of proper medical care constituted cruel and unusual punishment.  Plaintiff cannot avoid summary judgment by relying on conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Second, even if this court were to assume *arguendo* that plaintiff's injuries constituted a serious medical need, the court finds that defendant Clark and defendant Buen did not exhibit deliberate indifference to plaintiff's medical needs.  There is no evidence that Clark or Buen denied, delayed, or intentionally interfered with plaintiff's medical care.  *See Hutchinson*, 838 F.2d at 394.  There is also no evidence that the manner in which defendant Clark treated plaintiff indicated deliberate indifference to plaintiff's medical needs.  *Id.*  Instead, plaintiff's medical records reveal that defendants Clark and Buen immediately responded to the visiting area after the use of force incident, and adequately examined and treated plaintiff (#25, Ex. F, ¶¶ 5-11, Ex.

G, ¶¶ 5-10; #26, Ex. H (sealed)).[12]

In addition, the court notes that plaintiff's disagreement with defendant Clark's course of treatment is not evidence of deliberate indifference. *Sanchez*, 891 F.2d at 242. Plaintiff contends that defendants Clark and Buen should have taken him to the infirmary for "proper evaluation and/or x-rays" (#29, p. 7). However, prison medical staff do not violate the Eighth Amendment simply because their opinions concerning an inmate's medical treatment conflicts with the opinion of the inmate-patient. *Franklin*, 662 F.2d at 1344. Thus, a prisoner can only establish deliberate indifference if: "the course of treatment the doctor chose was medically unacceptable under the circumstances" and the treatment was chosen in "conscious disregard of an excessive risk to the prisoner's health." *Jackson*, 90 F.3d at 332. Plaintiff has produced no evidence that the course of treatment provided to him was medically unacceptable; or that defendant Clark and defendant Buen acted in conscious disregard to an excessive risk to plaintiff's health.

Plaintiff's claim that defendants Clark and Buen exercised deliberate indifference to plaintiff's serious medical needs is contrary to the evidence before the court. Accordingly, the court recommends that defendants' motion for summary judgment be granted and plaintiff's cross-motion for summary judgment be denied as to plaintiff's Eighth Amendment claim for deliberate indifference to a serious medical need.

### 3. Supervisory Liability

"Liability under [42 U.S.C. §] 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted); *see also Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir. 2007). Supervisory personnel are generally

---

[12] The adequacy of defendant Clark's examination and treatment is further supported by Dr. Saavedra's concurring opinion that plaintiff did not have serious injuries (#26, Ex. J, p. 3 (sealed)).

not liable under section 1983 for the actions of their employees under a theory of *respondeat superior*.  Thus, when a named defendant holds a supervisory position, the causal link between that defendant and the claimed constitutional violation must be established.  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  To prevail on a theory of supervisory liability, the plaintiff must establish that the defendant either: "personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."  *Id.* (internal quotations omitted).

Defendants aver that defendants Baca and Lindsay were not personally involved in the use of force incident or in plaintiff's subsequent medical care; and thus, cannot be held liable in their supervisory capacities (#25, p. 14).  Plaintiff claims defendants Baca and Lindsay were in the visiting area when plaintiff was subjected to excessive force, but did nothing to protect plaintiff from the physical abuse inflicted by their subordinates, and did nothing to ensure plaintiff received proper medical care afterwards (#29, p. 7).

As stated previously, the evidence before the court demonstrates that plaintiff was not subjected to excessive force, and that defendants were not deliberately indifferent to plaintiff's medical needs.  Accordingly, defendants Baca and Lindsay cannot be liable because plaintiff was not subjected to any constitutional violations.  However, even if that were not the case, the record establishes that defendants Baca and Lindsay did not enter the visiting area until after plaintiff had been restrained and the use of force incident had concluded (#26, Ex. I, p. 1-2 (sealed), #25, Ex. K, ¶ 5).  Thus, there is no evidence that defendants Baca or Lindsay were personally involved in plaintiff's altercation with correctional officers or that they knew of their subordinates' alleged constitutional violations and failed to prevent them.  There is also no

evidence that defendants Baca or Lindsay implemented any policies which impinged upon plaintiff's constitutional rights.  Further, although defendants Baca and Lindsay were present when medical staff examined plaintiff (#25, Ex. K, ¶¶ 6-7), there is no evidence to suggest that either defendant supervised the medical staff or that absent personal participation, either defendant had a duty to "insure Plaintiff received proper medical care" (#34, p. 12).

The court finds that defendants Baca and Lindsay were not personally involved in plaintiff's altercation with correctional officers or in plaintiff's subsequent medical care. Accordingly, the court recommends that defendants' motion for summary judgment be granted and plaintiff's cross-motion for summary judgment be denied as to plaintiff's supervisory liability claims against defendants Baca and Lindsay.[13]

### III. CONCLUSION

Based on the foregoing, and for good cause appearing, the court concludes there are no genuine issues for trial as to plaintiff's claims that defendants Portillo, Brown, Giancola, Sellers, and Naylor subjected plaintiff to excessive force; that defendants Clark and Buen were deliberately indifferent to plaintiff's serious medical needs; or that defendants Baca and Lindsay are liable for the actions of their subordinates.  Accordingly, the court recommends that defendants' motion for summary judgment (#25) be **GRANTED** and plaintiff's cross-motion for summary judgment (#29) be **DENIED**.  The parties are advised:

1.   Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by

---

[13] The Court finds that plaintiff has not presented any genuine issues of material fact.  Accordingly, the Court does not address the issue of qualified immunity.

points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#25) be **GRANTED** and plaintiff's cross-motion for summary judgment (#29) be **DENIED**.

      **DATED:  October 15, 2012.**

_____

**UNITED STATES MAGISTRATE JUDGE**